**In the Matter of PENN CENTRAL TRANSPORTATION COMPANY, Debtor.**

**Re LEASE OF CERTAIN LOCOMOTIVES.**

**No. 70-347.**

United States District Court, E. D. Pennsylvania.

July 24, 1973.

Richard A. Walkovets, Carl Helmetag, Jr., Philadelphia, Pa., for trustees, Penn Central Transportation Co.

Spencer Ervin, Jr., Gratz, Tate, Spiegel, Ervin & Ruthrauff, Philadelphia, Pa., for Richard Joyce Smith, trustee, New York, New Haven & Hartford R.R. Co.

Richardson Blair, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for Girard Trust Bank, Bank of New York, Irving Trust, and Morgan Guaranty Trust.

Peter L. Koury, Morgan, Lewis & Bockius, Philadelphia, Pa., for The Fidelity Bank.

## MEMORANDUM AND ORDER NO. 1282

FULLAM, District Judge.

On June 14, 1973, the Trustees filed a petition (Document No. 5828) seeking authority to lease 45 locomotives. Thereafter, on June 20, 1973, the Trustees amended their petition to increase the number of locomotives to 78 (Document No. 5864). A hearing was held on June 27, 1973, at which certain creditor interests expressed opposition to the proposed acquisitions.

The relevant considerations are easily identifiable. On the one hand, the Trustees have proposed a plan of reorganization which is, in effect, a plan for the orderly liquidation of the railroad enterprise unless legislative action by October 1, 1973 furnishes a realistic prospect of some other alternative. Delivery of the locomotives here involved would not be completed until late October. The creditors are understandably opposed to the creation of many millions of dollars of administration expenses in the acquisition of these locomotives, when there is no present certainty that they will be needed. On the other hand, acquisition of additional locomotives is vital to the continued functioning of the railroad; suitable financing of such equipment is not easy to arrange; if the Trustees fail to take advantage of the present opportunity, there can be no assurance that similar opportunities would be presented in the future; and, in any event, delay in ordering the equipment

would seriously impair the ability of the railroad to function during 1974 and succeeding years. Locomotives of the type here involved are in short supply, and it is reasonable to suppose that the Trustees would be able to dispose of these locomotives on reasonably favorable terms in the event of liquidation of the enterprise.

Following the hearing on June 27 and in light of the objections raised, the Trustees have given further consideration to the matter, and have conducted further negotiations with the suppliers. The result is a further modification of their proposal: The Trustees now seek authorization to acquire only 60 locomotives, and the proposed contract documents have been amended so as to insure that, in the event of cessation of rail operations, the Trustees will have a 90-day grace period during which the suppliers and financing entities will take no action to enforce their rights, and so as to clarify the right of the Trustees to sublease or otherwise dispose of the equipment.

On balance, I am satisfied that the transaction now proposed would be in the best interests of the Debtor's estate and of its reorganization. As a practical matter, in view of the existing uncertainties as to the future of the Debtor's railroad, the parties cannot proceed on the assumption that railroad operations will cease, nor can they disregard the possibility of liquidation. The alternative risks must be weighed. Rejection of the present proposal would be certain to have an adverse impact upon continued rail operations; approval of the present transaction would be much less likely to have adverse consequences in the event of liquidation. It is reasonable to assume that some entity would continue at least substantial portions of the Debtor's rail operations, in any event, and that such operations would require much of the Debtor's equipment; and that there would be a ready market for the equipment in the railroad industry generally. The principal risk would seem to be the possibility that a sublease of the equipment by the Trustees to others might produce less return than the rentals required under the Trustees' proposed leases. It seems preferable to permit the Trustees to assume this somewhat conjectural risk rather than the near certainty of impairment of operating efficiency.

## ORDER NO. 1282

And now, this 24th day of July, 1973, upon consideration of the amended petition of the Trustees (Document No. 5864), and upon hearing duly noticed, it is ordered:

1. The Trustees, or any of them, or their designee, are authorized to enter into, deliver, and to assume and undertake the obligations, duties and liabilities of:

a. A lease of 27 diesel electric locomotives from General Electric Credit Corporation (GECC).

b. A purchase order for such 27 locomotives to General Electric Company.

c. An assignment of the purchase order to GECC.

d. A lease of 33 diesel-electric locomotives from any wholly-owned subsidiary of General Motors Corporation (GMC-Sub).

e. A warranty and guarantee agreement with GMC-Sub.

f. An amendment to the trust agreement with United States Trust Company of New York (after authorization of said amendment by the Interstate Commerce Commission).

The foregoing agreements shall be substantially in the forms submitted to the Court. Provided, however, the maintenance and repair of the diesel electric locomotives to be leased shall be performed in accordance with the maintenance and repair provisions of the union agreements which may be in effect from time to time with respect to the Debtor's railroads operated by the Trustees.

2. Upon entering into the agreements, the Trustees are authorized to

comply with all of the provisions thereof without further order of or action by the Court. Without limiting the generality of the foregoing, the Trustees are authorized to deliver possession of the locomotives leased from GMC-Sub to GMC-Sub or to the the United States Trust Company of New York, as assignee of GMC-Sub's rights under the lease, and of the locomotives leased from GECC to GECC, upon any termination of the lease covering such locomotives by reason of default thereunder, without delay and without further order of or action by this Court.

3. The Trustees or any of them or their designee are authorized to execute or cause to be executed such additional documents and to perform such other acts as may be necessary to consummate the foregoing transactions.